IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-cr-30037 |
| ) | |
| ANDREA NICOLE TATE, ) | |
| ) | |
| Defendant. ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Andrea Nicole Tate's amended Motion for Compassionate Release (d/e 39) requesting a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On July 13, 2017, Defendant pleaded guilty to one count of distribution and possession with intent to distribute heroin in violation of 18 U.S.C. §§ 841(a)(1) and (b)(1)(C). Minute Entry, July 13, 2017. The plea agreement was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Plea Agreement 1, d/e 4. On November 21, 2017, the undersigned District Judge accepted

the plea agreement and sentenced Defendant to 168 months' imprisonment as the parties agreed to in the plea agreement. Minute Entry, Nov. 21, 2017.  The Court also imposed a three-year term of supervised release.  Id.  Defendant is currently serving her sentence at the Federal Prison Camp (FPC) in Greenville, Illinois. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last accessed July 7, 2020). Defendant's projected release date is June 3, 2028.  Id.

On June 22, 2020, Defendant filed a pro se motion for compassionate release (d/e 34) pursuant to 18 U.S.C. § 3582(c)(1)(A).  On June 26, 2020, after appointment of the Office of the Federal Public Defender, Defendant filed an Amended Motion for Compassionate Release (d/e 39).  Defendant requests compassionate release due to her health issues and the COVID-19 pandemic.  Defendant is forty-three years old and has been diagnosed with asthma, hypertension, diabetes, severe obesity, and HIV.  Am. Mot. Compassionate Release 1-3.

If released, Defendant proposes to live with her sister at her residence in Canton, Missouri.  The United States Probation Office, in a Memorandum (d/e 43) addressing Defendant's request for

compassionate release, concludes that Defendant's sister's residence appears to be an acceptable living situation for Defendant. Id. at 2. Probation's Memorandum also notes that Defendant has no disciplinary record from her time in the custody of the Bureau of Prisons. Id. at 1.

On July 1, 2020, the Government filed a Response Opposing Defendant's Motion for Compassionate Release (d/e 42). In the Response, the Government argued that Defendant's Motion should be denied because Defendant has failed to exhaust her administrative remedies. Resp. 2. In the alternative, the Government argues that should the Court reach the merits of the motion, the Court should deny the motion on the merits because Defendant does not satisfy the criteria for compassionate release. Id. The Government also notes that FPC Greenville has no confirmed staff or inmate cases of COVID-19. Id. at 22. The Government further details the procedures that BOP has implemented to curb the spread of the virus in its facilities. Resp. 15-16, 19-24.

On July 2, 2020, the Court held a videoconference hearing on Defendant's Amended Motion for Compassionate Release. At that

hearing, the Court heard arguments from counsel and a statement from Defendant. The Court took the Amended Motion for Compassionate Release under advisement and continued the hearing to July 7, 2020. On the day of the continued hearing, Defendant and the Government both filed additional documents, d/e 45, 47, which show that Defendant submitted a request for compassionate release to the warden of her facility on May 7, 2020, which the warden denied on July 5, 2020.

At the continued hearing on Defendant's motion on July 7, 2020, the Court heard additional arguments from counsel and another statement from Defendant. As of July 7, 2020, BOP reports no confirmed inmate or staff cases of COVID-19 at FPC Greenville, although the Federal Correction Institution (FCI) at Greenville has reported one confirmed inmate case of COVID-19. See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed July 7, 2020).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist,

one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting thirty days from when the inmate made his or her request, whichever is earlier.  The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in

>section 3553(a) to the extent that they are applicable, if it finds that—
>
>(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Defendant submitted a request for compassionate release to the Warden of FPC Greenville on May 7, 2020. Def.'s Supplemental Exhibits, d/e 47. In a letter dated on July 5, 2020, the Warden of FPC Greenville denied Defendant's request for compassionate release. Government's Supplemental Resp., d/e 45. Because more than 30 days have passed since Defendant submitted her request for compassionate release to the Warden of FPC Greenville, exhaustion of administrative remedies is not an issue in this case. See 18 U.S.C. § 3582(c)(1)(A).

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court, after considering the relevant factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment

and that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

    1.    <u>Extraordinary and Compelling Reasons for Release</u>

The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant is a forty-three-year-old African American woman who is five feet five inches tall and (at the time of the preparation of the PSR) weighed 274 pounds, which equates to a body mass index (BMI) of 45.6. Am. Mot. Compassionate Release 1. A BMI of 45.6 is considered to be severely obese. <u>Id.</u> at 1-2. Defendant has also been diagnosed with asthma, hypertension, diabetes, and HIV. <u>Id.</u>

On June 25, 2020, the Centers for Disease Control and Prevention (CDC) revised its guidelines concerning persons who are at higher risk for severe illness from COVID-19 based on the

available evidence.[1]  According to the most recent information from the CDC, having type II diabetes increases the risks of severe illness from COVID-19.[2]  The most recent guidance from the CDC also indicates that individuals with a body mass index of 30 or more are at risk of severe illness from COVID.[3]  Additionally, according to the CDC, based on the evidence available at this time, people with hypertension and moderate to severe asthma might be at increased risk of severe illness from COVID-19.[4]  The same is true for persons living with HIV.[5]

---

1. See CDC, Coronavirus Disease 2019 (COVID-19), People Who Need Extra Precautions: Who Is at Increased Risk for Severe Illness?, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed July 7, 2020).
2. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#diabetes (last accessed July 7, 2020).
3. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last accessed July 7, 2020).
4. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions (last accessed July 7, 2020).
5. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

Finally, according to the CDC "[l]ong-standing systemic health and social inequities have put some members of racial and ethnic minority groups at increased risk of getting COVID-19 or experiencing severe illness, regardless of age[, and] [a]mong some racial and ethnic minority groups, including non-Hispanic black persons, Hispanics and Latinos, and American Indians/Alaska Natives, evidence points to higher rates of hospitalization or death from COVID-19 than among non-Hispanic white persons."[6] According to the CDC, as of June 12, 2020, age-adjusted hospitalization rates are highest among non-Hispanic American Indian or Alaska Native and non-Hispanic black persons, followed by Hispanic or Latino persons. The latest statistics from the CDC indicate that non-Hispanic black persons have a rate of infection that is approximately five times that of non-Hispanic white persons.

The Government argues that the Court should deny Defendant's motion for compassionate release because the Federal Prison Camp at Greenville has not yet had any confirmed cases of

---

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#immunocompromised-state (last accessed July 7, 2020).
6. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html.

COVID-19.  See Resp. 22.  While FPC Greenville does not have any confirmed cases of COVID-19 at the current time, FCI Greenville has reported one confirmed inmate case of COVID-19.  As United States District Judge Pratt stated in United States v. Nicholson, No. 09-cr-00058-RP-CFB (S.D. Iowa, June 6, 2020), "As other courts have noted, the fact a prison has no confirmed open cases today does not provide much assurance in the current environment."

At the time Judge Pratt wrote that sentence, the facility he was referring to—USP Thomson—also had no confirmed cases of COVID-19.  Since then, there have been confirmed cases of COVID-19 at that facility.  See Federal Bureau of Prisons – COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed July 7, 2020).  Several other courts have concluded that extraordinary and compelling circumstances warranting a reduction in sentence may be present even when a defendant is housed in a facility without any confirmed cases of COVID-19.  See United States v. Williams-Bethea, No. 18-CR-78 (AJN), 2020 WL 2848098, at *5 (S.D.N.Y. June 2, 2020) ("[T]esting remains limited at FCI Danbury, so the Court cannot conclude that the lack of confirmed positive cases means that no inmates at the Defendant's facility carry the virus.

For these reasons and others, courts in this district have granted compassionate release to federal inmates due to COVID-19 even where the particular facility at which they were housed had none or few confirmed cases of the virus."); United States v. Schafer, No. 6:18-CR-06152 EAW, 2020 WL 2519726, at *2 (W.D.N.Y. May 18, 2020) ("[W]ithout knowing the percentage of the prison population that has been tested, the fact that there are no positive COVID-19 cases provides little insight into whether the virus has reached the facility."); United States v. Ben-Yhwh, No. CR 15-00830 LEK, 2020 WL 1874125, at *4 (D. Haw. Apr. 13, 2020) ("It is not a matter of considering Ben-Yhwh's risk of getting sick and receiving less than adequate medical care, it is the consideration that, even with BOP's conscientiousness and care in mitigating the spread of COVID-19 in its facilities through cleaning and social distancing, should Ben-Yhwh contract COVID-19, he is likely to need ICU intervention and has a high likelihood of dying."); United States v. Burrill, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) ("Federal correctional institutions, which had reported zero COVID-19 cases only weeks ago, and despite the steps the BOP has taken to contain the disease within its facilities, are now reporting

numerous virus-related deaths.") (citations omitted).  Defendant—who has two underlying medical conditions that place her at greater risk and three conditions that may increase her risk of serious illness or death from COVID-19—remains at risk of imminent harm despite the best efforts of the Bureau of Prisons.

The Court begins with the factors set out in 18 U.S.C. § 3553(a).  Defendant is currently serving a 168-month term of imprisonment for one count of distributing and possessing with the intent to distribute heroin.  According to BOP records, Defendant is scheduled to be released on June 3, 2028.  Defendant has not incurred any disciplinary history while is the custody of BOP.  Defendant has completed numerous classes while in prison and has earned her GED.  Am. Mot. Compassionate Release 6.

According to Defendant's Amended Motion for Compassionate Release and Probation's Memorandum, Defendant's proposed residence upon release provides a suitable living arrangement, and Defendant would have the support of her sister while transitioning into the community.  The Court has considered the factors in § 3553(a) and concludes that they entitle Defendant to compassionate release.

2. <u>Sentencing Commission Policy Statements</u>

The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2018).

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[7] U.S.S.G. § 1B1.13 cmt. n.1. One of the circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment

---

7. The Court notes that § 1B1.13 of the Sentencing Guidelines has not been amended to reflect all of the additional language added to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 only refers to a reduction "upon the motion of the Director of the Bureau of Prisoners," which is not the situation here. No sentencing policy provides guidance for when a defendant files a motion. Nevertheless, the Court still considers § 1B1.13.

of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).  Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D).  As discussed above, in this case, Defendant has serious underlying physical and medical conditions which are present in combination with the extraordinary and compelling reason presented by the COVID-19 pandemic.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community.  See U.S.S.G. § 1B1.13.  Although the Court notes that the offense for which Defendant is currently imprisoned did result in the death of another person from overdose, the Court has also taken note of the statements made by the victim's mother during the preparation of the PSR.  Specifically, the victim's mother stated that she did not believe Defendant intended to harm the victim and that she hoped to see Defendant turn her life around.  PSR ¶ 14.  Defendant's prior criminal history likewise consists primarily of controlled substance offenses and convictions for theft.  Finally, if released, if Defendant quarantines herself and practices social distancing, that will

diminish the risk of spreading the virus.

Therefore, the Court finds that Defendant has satisfied all requirements for compassionate release.

### III. CONCLUSION

For the reasons set forth above, Defendant Andrea Nicole Tate's Amended Motion for Compassionate Release (d/e 39) is GRANTED. The Court hereby reduces Defendant's term of imprisonment in this case from 168 months to time served plus 72 hours in order to allow BOP to test Defendant for COVID-19 and to allow Defendant to arrange transportation.

The Court modifies Defendant's conditions of supervised release to require Defendant to spend 6 months in home confinement, with the first 14 days to be spent in isolation. The home confinement shall start as soon as possible after her term of supervised release begins. During her term of home confinement, Defendant shall be monitored by telephone until such time as it is practicable to implement electronic monitoring. All other aspects of Defendant's sentence shall remain the same. Defendant's pro se motion for compassionate release (d/e 34) is DENIED as MOOT.

The Bureau of Prisons is ORDERED to immediately test

Defendant for COVID-19. The Clerk is DIRECTED to send a copy of this Opinion to FPC Greenville. Defendant must self-quarantine for a period of 14 days beginning at the time of her release, including while she travels from FPC Greenville to her sister's residence. Defendant shall travel to her sister's residence in a vehicle with three-row seating that allows her to follow the CDC's social distancing guidelines, which include staying at least six feet from others and wearing a face mask and gloves.

ENTER:  July 7, 2020

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE